UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 05-CV-114-JBC

Eastern District of Kentucky
FILED
MAR 0 3 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

| | |
|---|---|
| TARA STEINBACH,                    PLAINTIFF<br><br>v.<br><br>CREDIGY RECEIVABLES, INC., *et al.*<br><br>                                    DEFENDANTS | **Plaintiff's Memorandum in Support of Motion to Compel** |

In support of her Motion to Compel, Plaintiff Tara Steinbach states the following:

### Background

On October 15, 2005, Plaintiff served written discovery requests on Defendant Credigy Receivables, Inc. ("Credigy"), consisting of interrogatories, requests for production of documents, and requests for admission. Plaintiff next served written discovery on Defendant Stewart & Associates ("Stewart") on October 19, 2005, also consisting of interrogatories, requests for production of documents, and requests for admission. Defendants responded to Plaintiff's requests for admission by the deadline for responding, but failed to provide responses to her interrogatories and requests for production of documents.

The parties conducted a telephone conference call with Magistrate Judge Todd on November 29, 2005, concerning Defendants' failure to respond to Plaintiff's interrogatories and requests for production. In his November 30, 2005, Order [dkt. # 27], Magistrate Judge Todd gave Defendants a ten (10) day extension of time to respond to Plaintiff's discovery requests. In compliance with the Order, Defendants served their

responses to Plaintiff on December 9, 2005. A copy of Credigy and Stewart's responses are attached hereto as Exhibit A and Exhibit B, respectively.

Defendants Credigy and Stewart's responses to Plaintiff's interrogatories and requests for production were inadequate and incomplete. Plaintiff's counsel contacted Defendants' counsel by phone on January 20, 2006, to discuss obtaining complete responses and attempt to resolve any dispute. Defendants' counsel requested that Plaintiff's counsel send a letter detailing the need for supplementation. In response, Plaintiff's counsel sent two letters (attached as Exhibit C and Exhibit D), which set forth and explained the insufficiency of particular responses.

On January 25, 2006, Defendants' counsel e-mailed Plaintiff's counsel to schedule a telephone conference for the next day to discuss the discovery dispute. Plaintiff's counsel agreed to the conference, but Defendants' counsel failed to call. In an effort to continue to resolve this dispute, Plaintiff's counsel e-mailed Defendants' counsel to again set-up a telephone conversation. On January 27, 2006, the parties conferred by phone and discussed the dispute, and Defendants agreed to provide certain information. In a confirmatory e-mail (attached as Exhibit E), Plaintiff's counsel detailed the items that Defendants agreed to provide by the following week; however, Plaintiff did not receive any information from Defendant.

On February 8, 2006, Plaintiff's counsel e-mailed Defendants' counsel to schedule a telephone conference with Magistrate Judge Todd to discuss the discovery dispute and agreed upon the date and time of February 17, 2006, to conduct the phone conference. In his Order [dkt. # 52] following the conference, Judge Todd granted Plaintiff leave to file a motion to compel discovery from Credigy and Stewart. Immediately after the telephone conference, Plaintiff's counsel continued discussion with Defendants' counsel in yet another attempt to resolve the dispute. Defendants'

counsel only provided some information and limited the discussion to Credigy's Interrogatory No. 16. (internal communication request). On February 18, 2006, in a final attempt to resolve the dispute, Plaintiff's counsel e-mailed Defendants' counsel detailing the conversation regarding Interrogatory No. 16 and again requesting further supplementation before having to file this motion (see attached Exhibit F). In response, Defendants provided the name of a case filed against Credigy in Kentucky (Credigy and Stewart Interrogatory No. 9) and a list of states where Stewart is registered (Stewart Interrogatory No. 2).

## Motion Standard

Under Federal discovery rules, Plaintiff "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. Proc. 26(b)(1). In addition, the court may for good cause, "order discovery of any matter relevant to the subject matter involved in the action." *Id*. To be relevant "information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Rule 23(b) is broadly interpreted in that "discovery is not limited to issues raised in the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).

## Argument

Plaintiff propounded a number of similar discovery requests on Credigy and Stewart and their respective responses were often identical. In order to avoid repetition, the following is organized into four sections: (1) Credigy and Stewart's objection regarding the number of interrogatories permitted by Rule 33(a); (2) responses

from Credigy and Stewart to similar requests; (3) responses from Credigy; and (4) responses from Stewart. Each section details the requests that require a response or supplementation.

**Credigy and Stewart's Objection regarding Number of Interrogatories**

Credigy Interrogatories No. 19 – 25 and Stewart Interrogatories No. 19 – 25 all contain an objection stating that those interrogatories exceed the number permitted by the Federal Rules of Civil Procedure, and thus Defendants refused to respond. However, Defendants erroneously counted the subparts to various interrogatories as individual interrogatories. *See* FRCP 33(a). For example, Credigy Interrogatory No. 14 states:

> With respect to the information and data *you* furnished to the major credit reporting agencies ("CRAs") regarding the *debt*, state <u>for each</u> CRA:
> a)   the information *you* furnished;
> b)   the date information about the *debt* was furnished; and
> c)   the manner by which the information was transmitted, *including* the identification of the computer hardware and software or other medium by which the information was transmitted and its location.

Credigy incorrectly considered this single interrogatory as three (3) separate ones. The common theme of Interrogatory No. 14 involves the data supplied by Credigy to the CRAs. The subparts act as guidelines to aid Credigy in responding to the interrogatory, *i.e.* they specifically state the information sought. As such, the subparts are directed at eliciting details concerning the common theme and are counted as one interrogatory for the purpose of FRCP 33(a).

Courts have consistently held that if the subparts to an interrogatory are necessarily related to the "primary question," the subparts should be counted as one

interrogatory rather than as multiple interrogatories. *Safeco of America v. Rawstron*, 181 F.R.D. 441, 444 (C.D. Cal., 1998). Moreover, the foremost treatise discussing the issue, *Federal Practice and Procedure*, states that "an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question." Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure § 2168.1*, at 261 (2d ed.1994).

The above analysis applied to Credigy Interrogatory No. 14 applies to all of Plaintiff's interrogatories that contain subparts (*i.e.* Credigy Interrogatories No. 2, No. 17, and No. 21 and Stewart Interrogatories No. 2, No. 15, and No. 20). The subparts seek to elicit details about a common theme and do not ask about completely unrelated matters. Therefore, Defendants' objection to Interrogatories No. 19 through 25 is ineffective, and the rules require Credigy and Stewart to provide responses.

**Credigy and Stewart's Responses to Identical Requests**

1. <u>Credigy and Stewart Interrogatory ("Interrog.") No. 5</u> (employee information) requested the name, alias, job title, date of employment, last known address and telephone number of all of these Defendants' employees — whether currently employed or not — for the time period January 2002, through the present. In their responses, Credigy and Stewart objected to the interrogatory as irrelevant and "not reasonably calculated to lead to the discovery of admissible evidence." This is incorrect. The interrogatory is relevant to Plaintiff's claims in that it seeks the names of employees for the time period covering her dispute with Credigy and Stewart. These individuals were involved in activities surrounding Plaintiff's claims against Defendants (*e.g.*, acquiring the alleged debt at issue, attempting to find Plaintiff, and determining when to begin the collection process), and thus this information is discoverable.

2.  <u>Credigy and Stewart Interrog. No. 7 and No. 8, and Requests for Production ("RPD") A, B, and C</u> (Kentucky debtor disputes) requested, for a specified time, all notices of dispute and demands for validation that Credigy and Stewart received regarding their collection of consumer debts in Kentucky; any complaints it received related to collection of consumer debts in Kentucky; and any complaints it received regarding the other Defendants to this action. In their responses, Credigy and Stewart objected to these requests as vague, unduly burdensome, irrelevant, and stated that disclosure would violate the Fair Debt Collection and Practices Act ("FDCPA"). As a result, Defendants refused to provide any information or documents.

In her Amended Complaint, Plaintiff alleges violations of the Kentucky Consumer Protection Act. These violations include deceptive business practices and a pattern of racketeering activity that Credigy and Stewart have engaged in throughout the Commonwealth. Although Defendants have admitted liability for Plaintiff's KRS 370.167 claims, discovery that shows a pattern and practice of deception as to <u>other</u> consumers is relevant to Plaintiff's claim for punitive damages. This information should be readily available to Credigy and Stewart. Additionally, in response to Defendants' claim that disclosure would violate the FDCPA, Plaintiff expressed a willingness to accept redacted documents or even statistics in response to this request.

3.  <u>Credigy and Stewart Interrog. No. 9</u> (lawsuits against Credigy and Stewart) requested Credigy and Stewart to identify by party, case number, court, counsel, and nature of any civil proceedings to which they have a party in the past five years.[1] In their responses, Credigy and Stewart objected on relevance grounds and referred Plaintiff to PACER and similar court databases. Defendants' counsel later

---

[1] This request is one of the most common discovery requests made by parties. In fact, Defendants made a similar request to Plaintiff, and she provided a complete response.

provided the name of one Kentucky lawsuit against Credigy and stated that, to his knowledge, that was the only one.

The scope of the interrogatory is not limited to suits in Kentucky. As explained above, Plaintiff seeks information that illustrates a pattern of deceptive business practices and racketeering activity in support of her punitive damages claim. Whether Defendants have been involved in suits of a similar nature, or other judicial proceedings generally, is relevant to Plaintiff's claim. Moreover, the information requested should be readily available to Defendants, and instructing Plaintiff to search PACER and various state courts' databases is improper and shifts the burden of production onto Plaintiff. Not all states allow the public to search their court databases, and thus the relevant information would be unavailable.

4. <u>Credigy and Stewart Interrog. No. 10 and No. 11</u> (employees who communicated with Plaintiff) requested, for a specified time period, a list by name, alias, job title, last known address and telephone number, and dates of employment of each of Credigy and Stewart's employees, agents, or servants who communicated (orally or in writing) with Plaintiff or persons other than Plaintiff regarding matters involving the debt, this lawsuit, or the claims in the Amended and Supplement to the Complaint and to provide the subject matter of such communications. In its responses, Credigy and Stewart refer Plaintiff to "account notes already provided."

This response is incomplete and cryptic in that no specific document is identified for Plaintiff as "account notes." Further, Interrog. No. 10 and No. 11 request more information than Plaintiff has been able to extract from any of the documents obtained from Defendants. The request is very plain – each Defendant is to provide the <u>full name</u>, <u>job title</u>, <u>last known address</u> and <u>telephone number</u> of its employees whom communicated with Plaintiff. Moreover, Defendants have indicated that some of the

employees involved in this matter may no longer work for them. Since Plaintiff is free to contact Defendants' former employees (as long as they are not named defendants), Defendants must provide a <u>complete</u> response.

5. <u>Credigy and Stewart Interrog. No. 12</u> (information on employees who investigated Plaintiff's dispute) requested a list by name, alias, job title, last known address and telephone number, and dates of employment of each of Credigy and Stewart's employees, agents, or servants who investigated and responded to Plaintiff's dispute and demand for validation of the debt and any supporting documents. Defendants provided the name of Letitia Poston, a paralegal with Stewart.

This response is incomplete in two ways. First, the interrogatory requested name, job title, last known address, telephone number, and dates of employment. Defendants failed to provide any information about Ms. Poston beyond her name and job title. Second, during discovery, Defendants' counsel provided Plaintiff with a debt validation letter signed by William Bradham. Defendants claim that this letter was written in response to Plaintiff's demand for validation; however, nothing about Mr. Bradham is provided in response to the interrogatory. This omission illustrates the extent of Defendants' incomplete response and thus supplementation is required as to each of Defendants' employees who investigated Plaintiff's dispute.

6. <u>Credigy and Stewart Interrog. No. 13</u> (information received between Defendants) requested Credigy and Stewart to state and describe all information it has received from the other Defendants relating to Plaintiff, the debt, this lawsuit, or the claims in the Amended and Supplement to Complaint and provide any supporting documents. In its response, Defendants objected on grounds of relevance, attorney-client privilege, and work product.

These objections are ineffective. The information requested is relevant to the

Plaintiff's claims against Credigy, Stewart, and the other defendants. In particular, any information exchanged between the Defendants that relates to Plaintiff and the alleged debt clearly is relevant to Plaintiff's claims under the FDCPA and KRS 367.170 and her claims for abuse of process and punitive damages. For instance, it is believed that the individual Defendants did not review Plaintiff's file before attempting to contact her and collect on the alleged debt. This exchange of information between individual Defendants – or lack thereof – is relevant and probative of Plaintiff's claims for deceptive business activities and punitive damages.

As for Defendants' assertion of privilege, the attorney client privilege is narrowly construed and "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *In re Columbia HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir., 2002). Importantly, "the burden of establishing the existence of the privilege rests with the person asserting it." *Id*. As such, the privilege cannot be used as a blanket to cover otherwise discoverable information and it certainly does not extend to information given by Stewart to its own employees (*i.e.* Defendants Jason Green and John Fraiser). At minimum, Defendants must provide a general description of the requested information and documents claimed as privileged and specifically show that the attorney-client privilege applies. Defendants' failure to do so in response to this interrogatory is an error.

Similarly, in no way have Defendants shown that the work product doctrine applies. The work product doctrine extends beyond confidential communications between attorney and client and protects documents prepared in anticipation of litigation by or for the attorney. *Id*. As with assertion of attorney-client privilege, at minimum Defendants must provide a general description of the responsive documents claimed as work product and specifically show that the doctrine applies. As a limited

privilege, Plaintiff must be allowed an opportunity to overcome the privilege to attempt to obtain the information. This is not possible with a bald assertion of privilege with no further discussion, as Defendants have done here.

7. <u>Credigy RPD H and I and Stewart RPD I and J</u> (internal communications about the alleged debt) requested a copy of any document evidencing Credigy and Stewart's internal communications with respect to Plaintiff, the debt, this lawsuit, or her claims and any documents that comprise their file for the debt. In its response, Defendants objected to these requests as vague, unduly burdensome, and privileged, and again referred Plaintiff to the attached documents or "account notes." The request is limited and specific, and the assertion of privilege, as discussed above, is ineffective without a specific showing of applicability. Importantly, Defendants again failed to identify for Plaintiff where, specifically, the requested information was located, and thus Plaintiff cannot even tell if a complete response was given. If there are additional communications, Defendants should provide them.

8. <u>Credigy Interrog. No. 17 and Stewart Interrog. No. 15</u> (policies and procedures) requested Credigy and Stewart's policies and procedures for initiating a lawsuit on a debt, including the name and job title of those who make the decision or approve the recommendation to initiate a lawsuit, the criteria used in the decision, any attorney(s) you use to file suits in Kentucky, and any supporting documents. In response, Defendants stated that they "[rely] upon the advice of counsel to initiate suit" and that Kristen Mudd and Jennifer Hulse file lawsuits in Kentucky on their behalf. Through counsel, Defendants later agreed to provide the name(s) of employees or agents who determine when to file suit, and also to supplement the list of attorneys used to file suit in Kentucky, but has failed to do so.

Defendants asserted work product privilege to avoid providing Plaintiff with the

criteria used in making the decision to file suit. Work product is simply not applicable in this instance. For it to apply, Defendants' counsel must have created the criteria sought by Plaintiff in anticipation of this lawsuit, which is dubious. Defendants have failed to make such a showing and thus Plaintiff is entitled to this information. At most, it is confidential information for which there has been a confidentiality order entered since September 21, 2005 [dkt. # 18].

**Responses from Credigy**

1. <u>Interrog. No. 14</u> (credit reporting information) requested the information Credigy furnished to the major credit reporting agencies (CRAs) about the alleged debt; the date information was furnished; and the manner by which the information was transmitted. In its response, Credigy objected on vagueness and relevance grounds and referred Plaintiff to the credit report in her possession. Credigy's counsel later stated that he would ask his client what specific information it provided to the CRAs about the debt and provide the same. Plaintiff never received this information. The interrogatory and request for production clearly and properly requests specific information about Credigy's furnishing of information to the CRAs. Further, this information is clearly relevant to Plaintiff's punitive damages claim, and Plaintiff has a right to know what information Credigy furnished to the CRAs. This information is still being published for creditors and potential creditors, and continues to cause Plaintiff ongoing harm.

2. <u>Interrog. No. 16 and RPD K</u> (Simplect deciphering) requested Credigy to identify all codes, letters, numerals, and other symbols used in recording Plaintiff's information within the Simplect system[2]. In its response, Credigy objected to the

---

[2] The Simplect system appears to be used by Credigy to manage all of its collection accounts. The system records all collection activity, whether through automatic updates or human notations, for Credigy's various accounts. In its disclosures, Credigy

- 11 -

request as vague and overly broad and further stated "no document exists as a key." Plaintiff's counsel explained to Defendants' counsel the need for this information (*see* Exhibit C), and Defendants' counsel later provided some of the requested information; however, not all of the information requested by Plaintiff was provided in this conversation, such as the <u>full names</u> of the employees listed on the screenprints. As discussed above, this type of information is important to Plaintiff's ability to obtain all relevant and discoverable material in this matter.

Moreover, supplementation is needed because much of the information obtained in the conversation came from Defendants' counsel's "understanding" of what the symbols mean. Defendants' counsel repeatedly expressed uncertainty as to the factual information and could not fully answer certain questions. Therefore, Plaintiff seeks Credigy's full response under oath as required by FRCP 33(b)(1).

3.  <u>RPD L</u> (other Simplect information) requested Credigy to provide a screen print of the information contained within each folder of Plaintiff's account in the Simplect system.[3] In its response, Credigy objected on vague grounds of privilege. Through counsel, Credigy later agreed to provide the non-privileged information contained in the following tabs: "Suits", "Documents", "Info", "Tasks", and

---

provided Plaintiff with various screenprints taken from the Simplect system regarding her account (*see* attached Exhibit G). The Simplect system contains information (*e.g.* notations, abbreviations, user's initials, etc.) that Plaintiff cannot decipher. The purpose of Interrog. No. 16 is to obtain this type of information in order for Plaintiff to thoroughly review the Simplect screenprints provided by Credigy and understand what Defendants were doing.

[3] The screenprint of the Simplect information given to Plaintiff (*see* Exhibit G) shows that the system has various tabs where information is kept (*i.e.*, "Tracking", "Debtor Info", "Legal Monitoring", "Suit", "Documents", "Info", "Tasks", and "Garnishments"). In its disclosures, Credigy provided the information contained in the "Debtor Info" and "Tracking" tabs. In response to Plaintiff's discovery requests, Credigy provided the information in the "Legal Monitoring" tab. This interrogatory seeks the information contained in the remaining tabs.

"Garnishments." Plaintiff has not received any of the information that she is entitled to, nor has Credigy made the required showing of privilege – or even stated what privilege applied – to avoid production.

4. <u>Interrog. No. 18 and RPD O</u> (interest rate) requested, among other things, that Credigy explain how the interest on the alleged debt is calculated. Credigy's response referred Plaintiff to the attached documents. This answer is incomplete because the attached documents do not explain <u>how</u> Credigy calculates the interest on the debt. Plaintiff is clearly entitled to this relevant information.

5. <u>Interrog. No. 20 and Interrog. No. 21</u> (process of acquiring debts) requested Credigy to describe its process for acquiring debts, including the price that it pays for the accounts, and how it acquired Plaintiff's alleged debt. Credigy objected to the request as irrelevant and calling for confidential business information, and directed Plaintiff to "see attached documents." Information about how Credigy acquires debts bears on Plaintiff's claims that Credigy engages in deceptive business practices and racketeering activity. Concerns over confidentiality are mooted by the Court's entrance of the confidentiality order in this matter. Moreover, the "attached documents" do not address all of the issues raised in Plaintiff's request, including the terms and conditions on which Credigy acquired the debt and the amount Credigy paid for the debt. This information is clearly relevant to Plaintiff's claims arising out of the alleged debt, and Credigy must supplement its response.

6. <u>Interrog. No. 22 and RPD R</u> (documents from Fleet or First Select) requested a description of the information provided by First Select or Fleet, the original owners of the alleged debt, regarding the alleged debt and any documents provided to or received from First Select or Fleet. Credigy referred Plaintiff to the "attached documents," but again the documents do not provide a complete response to the

request. Plaintiff knows that other documents covered by this request are in Defendants' possession and control. This information is relevant to the validity of the alleged debt, its possible connection to Plaintiff, and whether Defendants ever had a right to collect on the debt, much less sue Plaintiff on it.

7. <u>Interrog. No. 23</u> (relationship of Defendants) requested a description of Credigy's relationship with Stewart. Credigy objected to the request as vague, irrelevant, and requesting confidential information. However, this request is clear and specific, and seeks information regarding the extent of the relationship between Defendants, which is relevant to Plaintiff's claims and likely to lead to the discovery of admissible evidence. As stated above, confidentiality is not an issue due to the confidentiality order.

**Responses from Stewart**

1. <u>Interrog. No. 16</u> (debt collection policies) requested Stewart to describe its policy, procedure, guideline, rule, standard, or protocol regarding assuring compliance with debt collection laws and to provide any supporting documents. Stewart objected on grounds of ambiguity, burden, and privilege. These objections are ineffective. The request seeks information and documents evidencing Stewart's policy and procedures with regard to complying with debt collection law. This information should be readily available to Stewart; and Stewart failed to show with specificity <u>how</u> privilege applies, much less <u>what</u> privilege applies. Thus, Stewart must provide this relevant information.

2. <u>Interrog. No. 20</u> (Kristen Mudd information) requested information about Kristen Mudd, an attorney licensed in Kentucky who files suits on behalf of Stewart, including her employment status, compensation scheme, and extent of Stewart's supervision of her work for Stewart. Stewart objected to this request as irrelevant and

- 14 -

privileged. The relationship between Stewart and Ms. Mudd is relevant to Plaintiff's claim for abuse of process and the ongoing harm that she continues to suffer. Moreover, Stewart has failed to state the specific privilege and grounds, and thus the privilege objection is ineffective.

3. <u>Interrog. No. 22</u> (supervision of non-attorney personnel) requested, for a specified time, the name(s) of the attorney who had direct supervisory control over non-attorney personnel. Stewart objected to this request as irrelevant. Plaintiff's claims against Stewart are based in part on unfair debt collection practices. The person(s) who supervises non-attorney debt collection personnel has knowledge and insight into Stewart's debt collection practices. This information is clearly relevant to Plaintiff's claims for punitive damages and violations of the FDCPA and KRS 367.170. If no such person exists, that information is also relevant to Plaintiff's claims as well.

4. <u>RPD W</u> (personnel file) requested a copy of Jamar McCoy's personnel file. Stewart objected to the request, and Defendants' counsel later stated in an e-mail that the personnel file consisted "almost entirely of private and embarrassing medical information." Plaintiff does not seek Mr. McCoy's private medical information. Mr. McCoy's communication directly with Plaintiff formed the basis of several factual allegations about Defendants' oppressive, abusive, and harassing debt collection practices. It is believed that Mr. McCoy regularly engaged in these unlawful debt collection practices. Moreover, he no longer works for Stewart, raising probative and relevant questions about his employment record with that organization and his reason for leaving. As such, the information requested is both relevant and discoverable. Plaintiff accepts that responsive information will be subject to a protective order.

WHEREFORE, Plaintiff Tara Steinbach respectfully requests that this Court enter an Order compelling the discovery sought by Plaintiff's First Set of Discovery Requests to Defendants Credigy and Stewart by a date certain.

> Respectfully submitted,
>
> Katherine S. Sanford
> Oran S. McFarlan, III
> YUNKER & ASSOCIATES
> P.O. Box 21784
> Lexington, KY 40522-1784
> (859) 266-0415
>
> By: _____
> ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of March 2006, a copy of the foregoing Memorandum in Support of Motion to Compel was served, via first-class U.S. mail, postage prepaid, on counsel for Defendants:

Todd S. Page
STOLL, KEENON & PARK, LLP
300 W. Vine St, Ste. 2100
Lexington, KY 40507-1380

Boyd W. Gentry
SURDYK, DOWD & TURNER CO., L.P.A.
40 N. Main Street, Suite 1610
Dayton, OH 45423

_____
Attorney for Plaintiff

**Exhibits
to
Plaintiff's Motion to Compel
Discovery Responses**

EXHIBIT   DESCRIPTION

A. Credigy's Responses to Plaintiff's First Set of Discovery Requests

B. Stewart's Responses to Plaintiff's First Set of Discovery Requests

C. Letter from Plaintiff's counsel to Defendants' counsel regarding Credigy's inadequate discovery responses, dated 1/20/06

D. Letter from Plaintiff's counsel to Defendants' counsel regarding Stewart's inadequate discovery responses, dated 1/20/06

E. E-mail from Plaintiff's counsel to Defendants' counsel confirming telephone conversation about discovery dispute, dated 1/27/06

F. E-mail from Plaintiff's counsel Defendants' counsel confirming conversation regarding Interrogatory No. 16 and the need for further supplementation, dated 2/18/06

G. Screenprints from Credigy's Simplect collection account system